UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Jeffrey Brian Johnson,<br><br>　　　　Appellant. | No.  2:15-cv-00990-JAM<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S JUDGMENT** |

　　　This appeal arose from Jeffrey Brian Johnson's Chapter 7 bankruptcy.  After the Chapter 7 Trustee filed a Report of No Distribution, the bankruptcy court discharged Johnson's debt ("Discharge Order").  Surprised by the Discharge Order, Johnson moved to set it aside.  After the bankruptcy court denied his motion, Johnson filed an appeal with this Court.[1]  ECF No. 1.  Although his appeal is unopposed [2] the Court is required to and has considered this appeal on its merits.

///

///

---

[1] This appeal was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).

[2] The Chapter 7 Trustee is no longer a party to this case.  Min. Order, ECF No. 17.  And the United States Trustee filed a Statement of Non-Participation.  ECF No. 22.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Johnson filed for bankruptcy on November 18, 2013.  App., ECF No. 19-1, at 3-4.  Three days later, Johnson received a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines ("Deadline Notice").  Certificate of Mailing, located at Case No. 2:13-bk-34696, ECF No. 18.  That document contained important dates, including the filing deadline to object to a debtor's discharge:  February 10, 2014 ("Filing Deadline").  Deadline Notice, located at Case No. 2:13-bk-34696, ECF No. 8.  About one month later, the Chapter 7 Trustee filed a Report of No Distribution, concluding that Johnson had "no funds available from the estate for distribution to creditors."  App. at 7.

Because Johnson's estate had been fully administered, the only remaining issue before the bankruptcy court was whether it should discharge Johnson's debt.  Meanwhile, Johnson moved to convert his bankruptcy from Chapter 7 to Chapter 13.  App. at 13-15.  The bankruptcy court denied Johnson's motion without prejudice on procedural grounds.  See id. at 23-24.  Then, on March 4, 2014, the bankruptcy court discharged Johnson's debt.  Id. at 25-26.  The next day, the bankruptcy court clerk entered Johnson's second motion to convert from Chapter 7 to Chapter 13.  See id. at 27-28, 175.

Eight days later, Johnson moved to set aside the Discharge Order ("Motion to Set Aside Discharge").  App. at 44-45.  The bankruptcy court denied Johnson's motion and dismissed Johnson's second conversion motion.  See id. at 73-77.  Johnson appealed to the United States District Court for the Eastern District of California.  The district court vacated the bankruptcy court's

1  order denying Johnson's motion and remanded the case so the
2  bankruptcy court could determine (1) whether the bankruptcy court
3  committed a clerical error under Fed. R. Civ. P. 60(a) when it
4  discharged Johnson's debt, and (2) whether Johnson's medical
5  treatment between February and March of 2014 constituted
6  excusable neglect under Fed. R. Civ. P. 60(b)(1).  See Johnson v.
7  Edmonds, No. 2:14-cv-00889, 2015 WL 430697, at *3 (E.D. Cal. Feb.
8  2, 2015).
9      On remand, the bankruptcy court addressed these questions
10 and again denied Johnson's Motion to Set Aside Discharge.  See
11 App. at 109-116.  Johnson now appeals.

13                     II.   OPINION
14    A.   Jurisdiction
15      District courts have appellate jurisdiction over a
16 bankruptcy court's final judgments, orders, and decrees.  See 28
17 U.S.C. § 158(a)(1).  Bankruptcy court decisions denying motions
18 to set aside a prior judgment are "final."  See, e.g., Johnson,
19 2015 WL 430697 at *1; In re Federico, No. 2:08-cv-2182, 2009 WL
20 2905855, at *1 (E.D. Cal. Sept. 8, 2009).  Because Johnson's
21 appeal pertains to a final judgment, this Court has
22 jurisdiction.
23    B.   Standard of Review
24      When reviewing a bankruptcy court's decision, a district
25 court functions as an appellate court and applies the standard
26 of review generally applied in federal appellate courts.  See In
27 re Crystal Props., Ltd., L.P., 268 F.3d 743, 755 (9th Cir. 2001)
28 (internal citations omitted).  Appellate courts apply a "de novo

review of legal conclusions and clear error review of factual findings" when reviewing discharge orders.  See In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997).

    C.    Legal Standard

        1.    Federal Rule of Civil Procedure 60(a)

A "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). In other words, Rule 60(a) "empowers a [c]ourt to correct its own clerical mistakes." In re Burke, 95 B.R. 716, 718 n.1 (B.A.P. 9th Cir. 1989). Bankruptcy Rule 9024 makes Rule 60(a) applicable to bankruptcy cases. See Fed. R. Bankr. P. 9024; In re Burke, 95 B.R. at 718.

        2.    Federal Rule of Civil Procedure 60(b)(1)

A "court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The United States Supreme Court established a four-factor test to assess whether missing a filing deadline constitutes excusable neglect. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380 (1993). "[A]t bottom," the assessment is "an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . .the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395 (internal citation omitted). The

1  Supreme Court emphasized that "inadvertence, ignorance of the
2  rules, or mistakes construing the rules do not usually
3  constitute 'excusable' neglect." See id. at 392.
4      Although Pioneer discussed excusable neglect under
5  Bankruptcy Rule 9006(b), the Ninth Circuit has held that the
6  Pioneer standard applies to Rule 60(b)(1). See Briones v.
7  Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997). In
8  short, Pioneer sets an equitable framework from which courts
9  should examine all circumstances involved rather than holding
10 that any single circumstance compels a particular result despite
11 other factors. See Briones, 116 F.3d at 382 n.2.
12     D.   Analysis
13     Johnson makes two arguments to support his appeal. First,
14 Johnson says that the bankruptcy court made a clerical mistake
15 under Rule 60(a) when it discharged his debt. See Appellant
16 Br., ECF No. 19, at 15. Second, Johnson argues that his late
17 filing constituted excusable neglect under Rule 60(b)(1). See
18 id. at 17. Johnson asks this Court to (1) vacate the bankruptcy
19 court's decision to deny his Motion to Set Aside Discharge and
20 (2) to vacate the Discharge Order. See id. at 23.
21     1.   Rule 60(a)
22     Johnson argues that the bankruptcy court made a clerical
23 mistake when it entered his second conversion motion the day
24 after the court discharged his debt. Appellant Br. at 15. He
25 maintains that had the bankruptcy court entered his second
26 conversion motion a day earlier, the court would not have
27 discharged his debt. See id.
28     The bankruptcy court did not make a clerical mistake when

5

1  it discharged Johnson's debt.  Bankruptcy Rule 4004(c)(1)
2  prescribes the conditions for triggering a Chapter 7 discharge:
3  "In a chapter 7 case, on expiration of the times fixed for
4  objecting to discharge and for filing a motion to dismiss the
5  case under Rule 1017(e), the court <u>shall</u> forthwith grant the
6  discharge."  Fed. R. Bankr. P. 4004(c)(1) (emphasis added).
7      But, like with most general rules, there are several
8  exceptions.  A bankruptcy court "shall not grant" a Chapter 7
9  discharge when, for instance, the debtor is not an individual;
10 when someone files a complaint or motion under § 727(a)(8) or
11 (a)(9); when the debtor files a waiver under § 727(a)(10); when
12 a motion to dismiss the case under § 707 is pending; when a
13 motion to extend the time to object to a discharge or to dismiss
14 the case is pending; when the debtor has not filed a statement
15 showing that he completed a personal financial management
16 course; or when a motion to delay or postpone discharge under
17 § 727(a)(12) is pending.  <u>See</u> Fed. R. Bankr. P. 4004(c)(1)(A)-
18 (F), (H)-(I).[3]

19     Here, all requisite conditions for entering a discharge
20 were satisfied, and no exception applies.  Johnson is an
21 individual.  He did not file a complaint or motion objecting to
22 a discharge.  He did not file a waiver.  There were no pending
23 motions to dismiss or to extend time to object to or delay
24 discharge.  And Johnson filed a certificate showing he completed
25 a personal financial management course.  <u>See</u> Financial
26 Management Course Certificate, located at Case No. 2:13-bk-

---

[3] This rule contains several more exceptions inapplicable here.
28 <u>See generally</u> Fed. R. Bankr. P. 4004(c)(1)(A)-(L).

6

34696, ECF No. 60.

This case differs from Burke, where the Ninth Circuit B.A.P. found a clerical mistake under Rule 60(a). Id. at 718. In Burke, the bankruptcy court clerk initially scheduled the wrong date for the creditors' meeting, but then issued another order rescheduling the meeting for the proper date, explaining that the first order was incorrect "[d]ue to inadvertence and clerical error." Id. at 716-17. No such scheduling error ocurred here. Johnson could have objected to a discharge, but he did not. Instead, he moved to convert his case from Chapter 7 to Chapter 13. See App. at 13-15. A pending motion to convert is not an enumerated exception under Bankruptcy Rule 4004(c)(1). See generally Fed. R. Bankr. P. 4004(c)(1)(A)-(L). So, once the Filing Deadline expired, the bankruptcy court properly discharged Johnson's debt because no enumerated exception applied.

Johnson also maintains that the bankruptcy court "confuses the law to the facts" because it cited irrelevant bankruptcy rules like Rule 4004(c)(1). See Appellant Br. at 16. But it is Johnson who is confused. Bankruptcy Rule 4004(c)(1), and any other statute or rule it cites, provides the relevant context upon which to analyze whether entering the discharge was a clerical mistake under Rule 60(a). In other words, the bankruptcy court included these rules in its Order to explain how a Chapter 7 discharge occurs, and then applied that procedural framework to Johnson's case to show why entering the discharge was not a clerical mistake under Rule 60(a).

In sum, the bankruptcy court did not make a clerical

7

1  mistake when it discharged Johnson's debt but did what the law
2  requires.
3         2.   Rule 60(b)(1)
4       Johnson offers Rule 60(b)(1) as another basis to vacate the
5  bankruptcy court's decision to deny his Motion to Set Aside
6  Discharge.  Specifically, Johnson argues that an unexpected
7  medical injury on February 18, 2014 made him "not cognitive" of
8  the relevant bankruptcy rules detailing the procedure to convert
9  from Chapter 7 to Chapter 13.  See Appellant Br. at 17-23.
10      For the reasons discussed below, Johnson's medical issues
11 do not constitute excusable neglect.
12              a.   Prejudice
13      Prejudice requires greater harm than simply that relief
14 would delay a case's resolution.  Lemoge v. United States, 587
15 F.3d 1188, 1196 (9th Cir. 2009) (internal citation omitted).
16 Yet Johnson maintains that he cannot obtain the relief he wants
17 (a Chapter 13 conversion) until this Court vacates his Chapter 7
18 discharge.  See Appellant Br. at 17.
19      The Discharge Order has not prejudiced Johnson because he
20 can still move to convert to Chapter 13.  The Bankruptcy Code
21 allows a Chapter 7 debtor to "convert a case under this chapter
22 to a case under chapter . . . 13 of this title at any time."  11
23 U.S.C. § 706(a) (emphasis added).  But a debtor does not have an
24 absolute right to convert to Chapter 13.  See Marrama v.
25 Citizens Bank of Massachusetts, 549 U.S. 365, 372-73 (2007)
26 (holding that a debtor's bad faith could stop him from
27 qualifying as a debtor under Chapter 13); In re Rosson, 545 F.3d
28 764, 767-68 (9th Cir. 2008) (same).  Nevertheless, as long as

1  Johnson follows procedural rules and establishes his eligibility
2  for a Chapter 13 conversion, his Chapter 7 discharge will not
3  preclude him from obtaining a Chapter 13 conversion which is the
4  relief he apparently wants.  See 11 U.S.C. § 706(a).

5  Johnson's creditors, however, would suffer prejudice if
6  this Court vacated the Discharge Order.  Discharging a debt
7  effectively ends the case.  As the bankruptcy court correctly
8  noted, "[t]he creditors have relied on [Johnson's] discharge to
9  finalize their accounts with [him] and make appropriate credit
10 reporting of [him]."  App. at 113.  Vacating the Discharge Order
11 "would require notifying the creditors that the discharge of
12 [Johnson's] debts has been reversed, necessitating their
13 reopening of [Johnson's] accounts, revisiting collection
14 activities and reversing their credit reporting of [Johnson]."
15 Id.

16 In short, Johnson has not shown that he would suffer
17 prejudice if this Court affirmed the bankruptcy court's
18 decision.  A discharge does not necessarily preclude conversion.
19 See 11 U.S.C. § 706(a).  And, as evidenced by the hearing
20 transcript, the bankruptcy court may grant Johnson's conversion
21 motion, provided Johnson satisfies the requisite conditions.
22 See App. at 146 ("I will convert it, if I get that motion and
23 it's properly noticed to your creditors and you establish your
24 eligibility for Chapter 13.").

25         b.   Length of Delay and Resulting Effect
26 Rule 60(c)(1) requires that a Rule 60(b) motion be made
27 "within a reasonable time" and "no more than a year after the
28 entry of the judgment or order or the date of the preceding

9

1  year." Fed. R. Civ. P. 60(c)(1). See also Lemoges, 587 F.3d at
2  1196. "What constitutes reasonable time depends upon the facts
3  of each case, taking into consideration the interest in
4  finality, the reason for delay, the practical ability of the
5  litigant to learn earlier of the grounds relied upon, and
6  prejudice to the other parties." Lemoges, 587 F.3d at 1196-97
7  (citing Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981)
8  (per curiam) (internal quotation marks omitted)).

9      Johnson never filed a motion to object to, delay, or waive
10 discharge. The first time he opposed discharge came 8 days
11 after the court entered it. See App. at 44-45. Although this
12 falls within the "one year" limit, the Lemoges's factors show
13 that Johnson did not object within a "reasonable time." First,
14 the same reliance argument outlined above supports two factors
15 that favor affirming the discharge: (1) prejudice to other
16 parties (here, Johnson's creditors) and (2) the interest in
17 finality. Second, the last two factors favor affirmance because
18 Johnson had the practical ability to know about the Filing
19 Deadline, and his medical issues do not justify missing that
20 deadline.

21                 c.   Reason for Delay

22    Johnson cites his medical problems for missing the Filing
23 Deadline, arguing that his medical issues made him "not
24 cognitive" of the relevant legal rules. See Appellant Br. at
25 19. Johnson parallels his situation to the attorney's in
26 Lemoges. In that case, the Ninth Circuit concluded that the
27 attorney's medical problems explained why he did not respond to
28 the court's order to show cause and why he did not file the

motion to set aside the dismissal until 7 months later. See id. at 1197. The Ninth Circuit found a causal link between the attorney's medical issues and his late filing.

No such causal link exists here. Johnson had known about the February 10, 2014 deadline since November 21, 2013. See Certificate of Mailing, located at Case No. 2:13-bk-34696, ECF No. 18. And Johnson's medical problems began 8 days *after* the Filing Deadline. See Deadline Notice, located at Case No. 2:13-bk-34696, ECF No. 8 (February 10, 2014 deadline to file objection to discharge) (emphasis added); Appellant Br. at 17 ("[U]nexpected injury occurred on February 18, 2014, demanding medical attention."). See also App. at 63 (admitted to hospital on February 20, 2014). So, unlike the attorney in Lemoges, Johnson has not shown that his medical treatment made him miss a deadline about which he had known for months. Making the Filing Deadline was within Johnson's "reasonable control." Pioneer, 507 U.S. at 395. But, rather than following the procedural rules to waive or delay or object to a discharge, Johnson twice moved to convert—an action that does not affect whether a court discharges a debt. See Fed. R. Bankr. P. 4004(c)(1)(A)-(L). Johnson cannot cite his medical issues for his confusion (and subsequent delay in objecting to discharge) because there exists no causal link between those issues and his late filing.

### d. Good Faith

"[A] late filing will ordinarily not be excused by negligence. . . . [and] pro se litigants are not excused from following court rules." Briones, 116 F.3d at 382.

Again, Johnson knew about the Filing Deadline. See

11

Certificate of Mailing, located at Case No. 2:13-bk-34696, ECF No. 18.  Yet he did not file any documents that affect discharge; instead, he filed motions that have no bearing on the issue.  See App. at 13-15, 27-28 (first and second conversion motions).  Johnson does not dispute these facts.  He relies only on his medical problems to justify his late filing.  See Appellant Br. at 17-23.  But, as explained above, no causal link exists between Johnson's medical problems and his late filing.  See supra Part II(D)(2)(c).

Once again, this case differs from Lemoges.  In Lemoges, no evidence suggested that the attorney had acted with anything less than good faith, given the causal link between his medical problems and his late filing.  Id. at 1197.  Johnson cannot now, after the fact, cite his medical issues to justify his late filing.  He may have been confused about some procedural rules, but, under these facts, he cannot argue, in good faith, that it was because of his medical condition.

After applying the Pioneer factors, the Court concludes that Johnson has not shown excusable neglect under Rule 60(b)(1).  He knew about the Filing Deadline, but focused instead on converting his case.  He took steps to accomplish that goal, and he allowed the deadline to expire.

### III.   ORDER

The Court acknowledges Johnson's genuine desire to convert his case from Chapter 7 to Chapter 13.  But that desire has blinded Johnson from the real issue.  A Chapter 7 discharge does not prevent him from obtaining what he wants—a Chapter 13

conversion.  Rather than questioning the bankruptcy judge's expertise, rather than blaming the court clerk for making an alleged clerical mistake, rather than invoking excusable neglect, Johnson should simply do what the law requires.  The bankruptcy judge made that explicitly clear at the hearing:

> You seem to believe you're not going to get a Chapter 13 discharge if you got a Chapter 7 discharge.  As long as it's the same case, you will get a discharge. . . . So you need to notice the motion to convert to Chapter 13.  All right.  And as long as you do that and you establish that your debts are less than the limits in 109(e) and that you have regular income, such that you meet the definition of a Chapter 13 debtor, also in Section 109, I will grant the motion.  And if I grant the motion and you confirm a plan and you complete the payments under the plan, you will get a Chapter 13 discharge.

App. at 149, 153.

For the reasons set forth above, the Court AFFIRMS the bankruptcy court's judgment to deny Johnson's Motion to Set Aside Discharge.

IT IS SO ORDERED.

Dated: January 3, 2017

*[signature]*
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE